IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION
COVINGTON

**CASE NO. 22-76-DLB-CJS**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | |
| | ) | |
| v. | ) | **DEFENDANT STRATMAN'S** |
| | ) | **SENTENCING MEMORANDUM** |
| | ) | |
| **JAMES STRATMAN** | ) | |
| | ) | |
| | ) | |

**SENTENCING MEMORANDUM**

Comes now the Defendant, James Stratman, by and through the undersigned counsel, and for his sentencing memorandum, hereby states as follows:

**I.     INTRODUCTION**

Mr. Stratman has pleaded guilty to the one count Indictment, charging a violation of 18 U.S.C. § 2113(a)(bank robbery). Plea Agreement, R. 32.

The statutory punishment for this crime is not more than 20 years imprisonment, not more than a $250,000.00 fine, and not more than three years of supervised release.

Mr. Stratman has 4 criminal history points and is in Criminal History Category III. (PSR Paragraph 31.) The base offense for this offense is 20. The specific offense characteristics of this crime allow for a 2-point increase as the property taken was from a financial institution per U.S.S.G §2B3.1(b)(1). The United States asserts another two levels should be added stating the defendant recklessly created a substantial risk of death or serious bodily injury to another person in the court of fleeing from a law enforcement officer per USSG §3C1.2. This is disputed by the defense. Mr. Stratman receives an

adjustment for acceptance of responsibility of 3 points. If the court determines the additional 2 points under USSG §3C1.2 are proper, this would result in a total offense level of 21 (PSR Paragraph 26.) Based on a total offense level of 21, his Guidelines range is 46-57 months. Based on a total offense level of 19, his Guidelines range is 37-46 months. Mr. Stratman will argue for a downward variance at sentencing.

### II. OBJECTIONS TO THE PRE-SENTENCE INVESTIGATION REPORT

There were several clarifications noted as to the Pre-Sentence Investigation Report by Mr. Stratman, however, the only objection that needs to be ruled upon prior to sentencing is the addition of the two points under USSG §3C1.2.

The defendant does not dispute the facts and circumstances as to his actions following the bank robbery detailed in the PSR at Paragraph 8. However, it must be noted those actions occurred over **one hour** after the bank robbery occurred. The alarm was activated at the bank at 12:26 p.m. Agent Harvey reported he located an individual fitting the defendant's description driving a vehicle **reported stolen** at the corner of 12th Street and Madison in Covington, Kentucky at 1:38 p.m. (Covington Police Investigative Reports USA-00001271) It was at that time the chase occurred.

*United States vs. Southerland*, 405 F.3d 263 (2005), was one of the first cases to address the nexus necessary to permit an enhancement under the Federal Sentencing Guidelines for "reckless endangerment during flight". Specifically, in *Southerland*, the Court held a sufficient nexus must lie between the underlying offense and the reckless flight in order for the enhancement to apply. (Id. at ¶ 268). In *U.S. v. Dial*, 524 F.3d 783 (2008), the Sixth Circuit also adapted that premise. In *Dial*, the defendant pled guilty to one count of conspiracy to manufacturing methamphetamines and one count of possession of a firearm. The District Court applied an enhancement to his sentence for

reckless endangerment during flight. On appeal, the Court held that there is a nexus requirement embedded in § 3C1.2.

In *Dial*, the Tennessee Bureau of Investigation participated in two confidential buys through an informant on April 1st and 6th of 2004, with the defendant. On April 8, 2004, an agent parked his unmarked vehicle near the defendant's home with emergency equipment flashing and he stood outside the vehicle wearing a vest that read "Police" and drew his gun. The source had relayed to the agent that the defendant was returning with a substantial amount of drugs. Upon seeing the agent, the defendant stopped his vehicle and then turned and proceeded up an embankment in order to go around his car. The defendant struck the agent's car, dragging it, and then left the scene at a high rate of speed.

On March 23, 2005, the defendant was indicted regarding the underlying charges and similar to the case at hand, in the presentencing report the parties "agree to disagree" as to whether or not the two-level enhancement should apply to the defendant pursuant to U.S.S.G. § 3C1.2 for reckless endangerment during flight. On appeal, the defendant argued there was not a nexus between the offense of conviction and reckless endangerment flight.

The Court in *Dial* adopted the *Southerland* approach, finding that when applying § 3C1.2, the District Court must find a nexus between the offense for which the defendant was convicted and the conduct that involved reckless endangerment during a flight. In our case, the Court must consider acts and admissions involving the offense for which the defendant was convicted, in this case, bank robbery. In turning back to *Southerland*, the five-prong test that the Government must show in order to apply the enhancement is as follows: (1) The defendant recklessly, (2) created a substantial risk of death or serious

bodily injury, (3) to another person, and (4) in the course of fleeing from a law enforcement officer, (5) in that this conduct "occurred during the commission of the offense of conviction, in preparation for that offense, or in the course of attempting to avoid detection or responsibility for that offense". (Id. 786-787, quoting *Southland*, quoting U.S.S.G. § 1B1.3.)

In our case, the Defendant is not denying that the factual basis for prongs 1 through 4 being met is set forth within the plea agreement. However, in regard to the 5th prong of this test, this Defendant argues that the conduct of fleeing did not occur during the commission of the bank robbery, in preparation for the bank robbery, or in the course of attempting to avoid detection of the bank robbery.

The United States cites to *United States v. Clark*, 2023 WL 4398325, as to why the enhancement should apply, however, this case can be distinguished from *Clark*. In *Clark* the defendant freely conceded that his flight from the officers "was clearly in response to the Ohio bank robbery". *Id.* No such concession has been made in this case.

It is clearly noted in the investigating officer's report that the vehicle in which he attempted to stop on the date of the incident was reported stolen. Looking at the temporal and geographic proximity between the flight and the alleged bank robbery, a reasonable person would not conclude that the "fleeing" occurred in attempt to avoid detection or responsibility for the bank robbery; instead, it was for being in a stolen vehicle. The charged offense in our case is bank robbery. That occurred over an hour prior to this. A reasonable person would conclude that if the Defendant was still in the vicinity of the bank robbery, over one after the offense occurred, and had not been detected, he was more concerned with the stolen vehicle than the belief that anyone thought that he was involved

with the bank robbery.

The United States must show by preponderance of the evidence that the Defendant's conduct satisfied the requirements for the § 3C1.2 enhancement. In the case at hand, they cannot meet that burden. Based upon the same, this Defendant argues that the 2-point enhancement is not applicable in this case and his total offense level in regard to this matter would be 19. With a total offense level of 19, the United States Sentencing Guidelines sentencing range for the Defendant would be 37 to 46 months. If the Court were to determine that the 21 point offense level is applicable, the baseline of a Criminal History Category of 3, the Defendant's sentencing guidelines range would be 46 to 57 months.

### III.   SENTENCING FACTORS

#### A.   NATURE AND CIRCUMSTANCES OF THE OFFENSE

On September 26, 2022, the defendant entered the US Bank at 602 Madison Avenue, Covington, Kentucky, and handed the teller a note asking for money and instructing her to not call anyone, and to wait 10 minutes before calling the police. (PSR at ¶ 7). The teller handed the defendant $1,583.00 dollars and the defendant left the scene. The reporting officers were able to track the defendant to a stolen vehicle parked at the Deps Liquor Store. (PSR at ¶ 7).

Approximately one hour later that same vehicle was located and was confirmed stolen out of Newport, Kentucky. (PSR at ¶ 8). Officers initiated a traffic stop and the defendant fled at a high rate of speed, driving through an intersection without the right of way. (PSR at ¶ 8).

Mr. Stratman has accepted responsibility for his role in this offense and timely pleaded guilty pursuant to a written plea agreement. (Id. at ¶ 1). He has waived his

right to appeal the guilty plea, conviction and any sentence, with the sole exception that he may appeal any aspect of the sentence if the length of term of imprisonment exceeds the advisory sentencing guidelines range as determined by the Court at sentencing. (Id. at ¶ 8.) He has also waived his right to collaterally attack the guilty plea, conviction and sentence, except for claims of ineffective assistance of counsel. (Id. at 8.) His prompt acceptance of responsibility weighs in his favor when determining an appropriate sentence.

B.     HISTORY AND CHARACTERISTICS OF THE DEFENDANT

Mr. Stratman was born in 2000 in Cincinnati, Ohio to James Gregory Stratman and Diane Clark. While he was raised by both parents with his three biological siblings and a half-brother, his parents divorced when he was 12 and his father was not a consistent, nor positive, part of his life.

His family struggled financial, frequently staying in shelters or subsidized housing. His parents fought a lot and his father was an alcoholic. His father spent time in jail and was rarely present after the divorce.

Mr. Stratman first began treating for mental health issues at the age of fifteen. He was diagnosed with Anxiety, Depression and PTSD. Between 2016 and 2018 he treated with NorthKey and SAFY of Northern Kentucky. While incarcerated in Ohio he began taking medication for his nightmares and anxiety, but he was unable to obtain that medication once he was released. He also has a history of suicidal thoughts.

After Mr. Stratman was incarceration for the charges in this case, he underwent a psychological evaluation at FDC Miami. He was diagnosed with Anxiety Disorder; Major-Depressive Disorder; Cannabis Use Disorder (moderate); Opioid Use Disorder (moderate); Other Specified Personality Disorder, with narcissistic and antisocial features; and Unspecified Trauma and Stressor Related Disorder. As a result of his medical diagnoses,

Mr. Stratman has been prescribed Zyprexa (20 mg by mouth at night).

Defendant also has a long history of substance abuse. He began smoking marijuana at the age of 13 and was smoking up to five blunts per day prior to his arrest. He also started drinking at age 14, to the point of intoxication on the weekends. He first began using cocaine at age 15 and was using half a gram per day up to his arrest. He previously tried other drugs, including Percocet, ecstasy, and Adderall, using them only on occasion. Even while incarcerated, he had a history of substance abuse related infractions, and had no real substance abuse treatment.

The Defendant obtained his high school diploma, but underwent no other schooling. His employment was spotty, working at McDonald's on and off a couple of times. At the time of his arrest, he had no source of income.

While Mr. Stratman does have a criminal history, his points under the Sentencing Guideline are only 4. Specifically, he has two prior convictions that qualify for points.

The Defendant first became involved in the juvenile justice system at age 16. He was charged previously with two DUIs and driving on suspension. His first felony offense occurred at age 18 in Kansas. It should be noted that at that time he was dating a girl that was with him when that offense occurred, both charged. Mr. Stratman was sentenced to probation while his girlfriend ended up serving time for the offenses related to that infraction. Just five months later, he was arrested in Wood County, Ohio, again, with the same girlfriend, and sentenced to three years in prison in regard to failing to comply with a police officer and receiving stolen property. Plaintiff was released from The Ohio Department of Corrections on August 22, 2022, just one month prior to the offense in this case. Defendant's two prior felony convictions involve interactions with a former girlfriend. Since his last conviction, contact with that girlfriend has ceased. He has two prior felony

convictions occurring within five months of each other. He was only out one month when the underlying charge in this case occurred.

When Mr. Stratman was released from The Ohio Department of Corrections, he was sent to a sober living house, which charged rent of $100 per week. He had no employment and no other financial assistance. Within a week, he was unable to afford the sober living facility and began living on the streets and between family and friends' houses when he could. He worked temporarily at McDonald's, but was unable to get enough hours to obtain enough money to pay for the sober living house, food, and clothing. At that time, he was suffering from issues with substance abuse, untreated psychiatric issues and homelessness. This does not excuse his behavior but allows the Court to see the obstacles he was facing after three years of incarceration.

Mr. Stratman's mother, Diane Stratman, has written a letter on his behalf. (Character Letter, Diane Stratman.) She explains that Mr. Stratman did not have a father figure growing up and any interactions he had with his father were not necessarily good ones, as his father was a bad influence on him and his brothers. While he did decently in high school, and has always been a caring and loving child, he made a wrong turn when it came to substance abuse and the friends that he chose. Mr. Stratman apparently had an issue with an older mother-like figure that took advantage of him and charges were pursued regarding the same. It was at that time he began experiencing more mental health issues and drug and alcohol abuse.

Ms. Stratman describes James as being very giving and loving, and always willing to help people out. Recent deaths in his family, including the death of his grandparent (he was incarcerated when that occurred) has greatly affected him. Mr. Stratman was raised primarily by his mother, who unfortunately had a hard time keeping employment and was

raising four boys on her own. He had a good relationship with his grandparents, who unfortunately have passed within the past few years. He did not have a good relationship with his father, who was an alcoholic and was in and out of jail. Unfortunately, he did not really have a father figure in his life. That lack of direction has contributed to the poor decisions he has made, along with his psychiatric and substance abuse issues.

It is Mr. Stratman's intent while incarcerated to obtain vocational training so when he is released, he can become a beneficial member of society and contribute to the same. He never really held a job and he has never obtained any skills to do so. One of the biggest obstacles he faced when being released from The Ohio Department of Corrections, was that he had no income, and no real skill set to obtain a good job. He wants to use the time he is incarcerated to learn a trade so he can become gainfully employed to support himself he when he is released. He also wants to participate in substance abuse programs and mental health treatment to maintain his sobriety and to stay on a good path forward. This does not excuse his conduct, but he does have the potential to be a productive member of society and has every intent to use this time to work towards that goal. He asks the Court to take this into consideration.

Mr. Stratman has unfortunately faced some hardships in his life and has made bad choices, but given the opportunity, he intends to be a good, productive member of society.

        C.     THE NEED FOR THE SENTENCE IMPOSED

There are several factors the Court considers under this section of the Sentencing Guidelines. First, is the need to reflect the seriousness of the offense and promote respect for the law. The Defendant has taken responsibility for the offense charged and has been incarcerated since his arrest in October of 2022. He understands the seriousness of the offense and is willing to accept the Court's sentence regarding the same. However, under

that same factor of 3553, the Court is also looking to provide the Defendant with needed education or vocational training, medical care and/or other treatment. In this situation, the Defendant suffers from mental health issues and substance abuse addiction. Since undergoing treatment while incarcerated for the same, there has been a dramatic change in his behavior and his understanding of the charges against him, the seriousness of the crime, and his want to make a change in himself for the better of the public. As stated above, he would like to obtain further vocational training and stay consistent with his mental health and substance abuse treatment, so that he can became a productive member of society. Unfortunately, when released from The Ohio Department of Corrections, he was not given any support either while incarcerated or once he was released. Mr. Stratman intends to use this time to adequately prepare for release to become a better person. He will use time to obtain the medical treatment that he needs and vocational training, and participate in drug treatment, so that he can become a productive member of society. In looking at the lower end of the Sentencing Guidelines, or even below, any term of prison that this Defendant would have to serve would adequately protect the public, promote respect for the law, and reflect the seriousness of the crime while still, rehabilitating Mr. Stratman to the degree that he could become a good member of society.

### IV.  CONCLUSION

For the reasons stated herein, the Defendant, James Stratman respectfully requests that the Court first determine that the total offense against him is 19, and that the 2 point enhancement is not applicable in this case. This would make his Sentencing Guidelines range 37 to 46 months. However, if the Court were to determine the 2 point enhancement did in fact apply, with the total offense level of 21 and a criminal history category of 3, his Sentencing Guidelines range would be 46 to 57.

We would ask the Court to take into consideration the fact that the Defendant only qualifies as a Category 3 by 1 point. He has had two prior felony offenses, for which he has served three years in prison for. These occurred only four months apart during a rough time in his life. Upon his release, he had issues with employment, substance abuse, and a mental illness, which unfortunately led him down the path to where we are today. He realizes the seriousness of the crime and maintaining treatment for his mental health and substance abuse, and obtaining vocational training to become a better person. The Defendant would ask that you consider a sentence to below the Sentencing Guidelines range, or at the very least, the minimum, 37 to 46 months. Mr. Stratman is young, he is only 23 years old. He has the willingness and desire to change and become a better person. He still has a chance. He has a chance to change, a chance to make a difference. He is actively seeking to maintain his sobriety, attend counseling and take medications to treat his mental illness, and obtain his vocational training so that he can be employable upon release.

Mr. Stratman has the family support of his mother, once released, to help him maintain the right path. The Defendant is asking the Court to give him a chance. He requests placement in a BOP facility in Kentucky where he can be close to his family, he can obtain mental health and addiction treatment, and attend vocational training. He is asking for recommendation to participate in a job skill training or work opportunities that are available to him.

We are asking for you to give Defendant Stratman a chance. He is basically still a young man that has many possibilities in front of him. He needs to make better decisions and he wants to obtain the tools while incarcerated to teach him to do that. He wants to be a better person and he needs to be a better person. He realizes the

seriousness of the situation and his crimes, and wants to use the time incarcerated to become a productive member of society. For the reasons stated herein, the Defendant, James Stratman, respectfully requests that the Court consider a reasonable sentence, based on the arguments above, taking into consideration his upbringing, substance abuse, and mental health issues.

Respectfully submitted,

**/s/ Lindsay A. Rump**
Lindsay A. Rump (KBA #90078)
130 Dudley Road, Ste. 200
Edgewood, KY 41017
(859) 331-4900 – Phone
(859) 426-3532 – Fax
lindsay@cetrulolaw.com
*Counsel for Defendant, James Stratman*

## **CERTIFICATION**

On December 27th, 2023, I electronically filed this document through the CM/ECF system, which will send the notice of electronic filing to all counsel of record.

/s/ Lindsay A. Rump

From,
Diane Stratman
2770 Roseann Lane #A Cincinnati, OH 45239
(513) 489-1845
babygirldiane29@yahoo.com
December 17, 2023

Dear Honorable David Bunning:
RE: James Stratman

Your Honor,

Hello, I am writing this letter in regards to the sentencing of my son, James Stratman. My heart is to share some things about James's character that may not be fully known to the court. It is my sincere hope these things are taken into consideration as a fair and just sentence is determined.

Leading up to this sentencing day, I want to make it clear that James has friends and family who will love and support him in his abilities to succeed as a son, brother, uncle, and man both now and in the future!

James has a tender heart and he is compassionate toward others. If someone is having a difficult time, he is one of the

first to encourage or try to help them in a tangible way. He has helped many others by doing cleaning and repair projects and lending a helping hand. James has always been a positive and upbeat person. He is a good provider for his family, working diligently and thinking of creative ways to support and take care of his family. He is also generous and shares his resources with others in need.

One example of his heart to help others is that James has been giving his time and help to neighbors. Woody is a widow friend of ours for several years an elder man with no help and James would check on him daily and help him whenever needed. He would always lend a hand to those in need.

Everytime I cooked and we had extra he would ask if he could offer his friends a plate to feed them and make them feel at home. I've seen him give his own clothes off his back to help someone in need.

He loved playing sports staying active and working out. Football was his favorite. He played in school and was always eager in participating each game. Him and his brothers always loved playing basketball together and make time for each other. He was very smart in school. He was in advanced classes. He scored second place statewide in testing. He was offered many college scholarships for his inteligence. He was very likable and made many friends. His teachers loved him for his compassion. When he worked he picked up extra hours to help out. He was devoted to his work. He was always willing to go that extra mile. He always felt bad for ones in need and figure out a way to give even if it was a shirt off his back. He would always put a smile on someones face. He would always involve in the communnity to see if there was any help needed or a way to make a few extra bucks. He would go around asking to take out trash or yard work. He was willing to help out in anyway. He always looked after his brothers. They looked up to him.

James was the first to graduate. I was a very proud mom. He became very independant on his own.

James grew up with 4 brothers. As a single mother I struggled to provide all their needs and attention. So he didnt live the best life and wanted nice things like all his friends. His father was a bad role model and was never there for him. He was a bad alcoholic and drug user. He had anger issues and usually took it out on them. His father never providived for him and his brothers. James did seek counseling for helping him. He started hanging with a bad crowd making bad decisions. He never really had a male or dad figure to look up to. So I feel he started heading down the wrong road with no support. I had to take care of his grandpa. He had 4 cancers and so many surgeries and was not able to take care of himself so I was gone alot taking care of him and making big decisions for him. He loved his grandpa and it hurt him to see him sick and not be able to be there for him.

Also I was struggling myself with the loss of my mother. He was incarscrated and took it hard not being able to see her and tell her goodbye. He also lost a good friend from a drug overdose. Those deaths impacted him alot. When he was younger he looked up to an older friend as his mentor. She took him to reds and bengals games and helped him with clothing and things he needed. She helped him cope with his problems and talk him through things. She was much older than him maybe more of a mom figure. But one day things changed she wanted more from him and charges was persuid. So after he went through trust issues. He was afraid to open up again. She took advantage of him and he was afraid. Counseling did help him out with opening up and talking again. I wasnt always financial stable and didnt live in the nicest places. So he seen alot of bad things and had to defeat himself growing up in bad neighborhoods. Some of the choices he made wasnt the greatest.

During this time, I have seen him experience the good ant the bad, the ups and the downs

as well as the joys and sorrows in life but nonetheless, I have been convinced that he is a decent loving person at the core. He just simply needs more people to believe in him so that he can become the person I know he can be. I strongly believe in my son James. He has made mistakes but he is incredibly remorseful and is willing to do whatever it takes to make reparation financially and emotionally if possible. But to do that he needs you to give him an opportunity to have a second chance. I realize that James broke the law and I do not believe that he should go without some type of consequence. I just hope you will recognize the power you yield with regard to the future of this gentleman and make a fair decision.

I am writing this reference letter for James who is my loving son. He is 23 years old and has always been a respectful and obedient child. Although I respect the courts decision and agree that he has not been very truthful and has broken some

rules. I'm writing this letter to shed more light on the matter.

To be honest, our family has been going through some rough times since the passing of our loved ones. Due to this he has been very stressed and depressed lately, we couldn't combat his pain with anything which is why he decided to find solace in his way. And that's what led him to this situation.

I strongly believe that it was a one-time vulnerability and I promise on behalf that the situation will not repeat itself in the future. And during all this time he has been feeling very remorseful and regrets the decisions he took which led him here.

Therefore, due to all these reasons, I am asking for his forgiveness, And for any further inquiries feel free to contact me any time.

Thanks for your time and patience.

Sincerely,

Diane Stratman

*Diane Stratman*